# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BMO HARRIS BANK, NA,**

   **Plaintiff,**

**v.**                  **Case No: 6:16-cv-2238-Orl-37KRS**

**DTL TRANSPORTATION, INC.,**

   **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**  **PLAINTIFF'S SECOND RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. No. 26)**
>
> **FILED:**   **July 26, 2017**

### I. BACKGROUND.

  On December 28, 2016, Plaintiff, BMO Harris Bank, N.A. ("BMO"), filed a complaint against Defendant, D.T.L. Transportation, Inc. ("DTL"). BMO sought injunctive relief (Count One), specific performance of agreements entered into by the parties (Count Two), replevin (Count Three), and damages for breach of lease (Count Four) and breach of loan and security agreement (Count Five). Doc. No. 1. The case is before the Court pursuant to its diversity jurisdiction.

  BMO caused the complaint to be served on the registered agent of DTL. Doc. No. 6. After DTL failed to appear in this action and upon application by BMO, the Clerk entered a default against DTL. Doc. No. 18. BMO now asks the Court to enter a default judgment against DTL.

## II. STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment. *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for the purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id*.

## III. FACTUAL ALLEGATIONS.

On December 17, 2017, General Electric Capital Corporation ("GECC"), which is not a party in this case, acting as lessor entered into a Master Vehicle Lease Agreement (the "MLA") with DTL, acting as lessee. The MLA governed the terms by which GECC or one of its affiliates, including GE TF Trust ("GE Trust"), may, from time to time, lease certain vehicles to DTL pursuant to Schedule A annexed to the MLA. Doc. No. 1 ¶ 6 & Ex. A.

Between 2014 and 2015, GE Trust, as lessor, and DTL, as lessee, entered into not less than six "Schedule A's" (collectively, the "Schedules"), under which GE Trust agreed to lease the vehicles described in the Schedules (the "Leased Equipment") to DTL, and DTL agreed to make payments to GE Trust. *Id.* ¶ 7 & Ex. B. The MLA was amended in a Schedule signed on December 17, 2014 to provide that the Lease Term of each vehicle "shall commence on the date when such Vehicle is delivered to Lessee." Doc. No. 1-1, at 2. Pursuant to the terms of the Schedules, GE Trust had all rights of GECC under the MLA. *Id.* ¶ 8. Pursuant to the terms of the MLA and the Schedules (collectively, the "Lease"), GE Trust maintained an ownership interest in the Leased Equipment, which included all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto. *Id.* ¶ 9.

While BMO does not specifically allege that GE Trust (BMO's predecessor-in-interest) delivered any of the Leased Equipment to DTL for its use, it does allege that after the default "BMO obtained possession of certain of the Vehicles" (the "Repossessed Units") and that DTL "failed or refused to return" certain Vehicles (the "Retained Units"). *Id.* ¶¶ 25, 26. It also alleges that, under the Lease, BMO is entitled to take possession of the Retained Units or direct DTL to move the Retained Units to a place BMO deems convenient. *Id*. ¶ 40; Doc. No. 1-1 ¶ 18.

On February 20, 2015, GECC (BMO's predecessor-in-interest), as lender, and DTL, as borrower, entered into a Loan and Security Agreement (the "LSA"), pursuant to which GECC financed DTL's purchase of the tractor trucks described in the LSA, and DTL agreed to pay GECC $624,607.20. *Id.* ¶ 10 & Ex. C. BMO does not specifically allege that GECC tendered the loaned funds to DTL, but it does allege that "GECC financed DTL's purchase of the tractor trucks described

in the LSA (the 'Collateral')." Doc. No. 1 ¶ 10. It also alleges that DTL owes "the outstanding principal balance of $414,478.14" under the LSA agreement. *Id.* ¶ 57.[1]

After the Agreements were executed, GECC and GE Trust transferred and assigned to BMO all of their respective rights, titles, and interests in and to its account with DTL, including, without limitation, the Agreements and their respective interests in the Vehicles. Therefore, BMO is GECC and GE Trust's successor-in-interest with respect to all rights, claims, and interest related to DTL. *Id.* ¶ 13 & Ex. D.

The Agreements are governed by the law of the State of Texas. Doc. No. 1-1 ¶ 29; Doc. No. 1-3 ¶ 7.6. Pursuant to the terms of the Agreements, it is an event of default if DTL fails to pay any amount when it is due. Doc. No. 1 ¶ 14; Doc. No. 1-1 § 17; Doc. No. 1-3 § 5.1. Section 18 of the Lease provides that upon the occurrence of an event of default, DTL is required to pay liquidated damages as a loss of the benefits of the bargain and not as a penalty. Doc. No. 1 ¶ 15; Doc. No. 1-1 § 18. Section 5.2 of the LSA provides that upon the occurrence of an event of default, the lender may exercise all rights under the LSA and applicable law and may accelerate the balance due under the LSA. Doc. No. 1 ¶¶ 16, 17; Doc. No. 1-3 § 5.2. Additionally, pursuant to the terms of the Agreements, upon the occurrence of an event of default, the lender may (i) repossess the Vehicles and (ii) require DTL to deliver the Vehicles to the lender. Doc. No. 1 ¶ 18; Doc. No. 1-1 § 18; Doc. No. 1-3 § 5.2

DTL defaulted on its obligations under the Agreements by, among other things, failing to pay the amounts due under the Agreements. Doc. No. 1 ¶¶ 14-16. As a result of DTL's defaults,

---

[1] BMO sometimes refers to the Lease and the LSA collectively as the "Agreements." It sometimes refers to the Leased Equipment and the Collateral collectively as the "Vehicles." Doc. No. 24, at 4 n. 2.

BMO elected to accelerate the balance due under the LSA and declare all payments to be made under the Lease due and owing. *Id.* ¶ 21.

On December 13, 2016, BMO notified DTL (i) of its default under the Agreements; (ii) that the balance due under the Agreements had been accelerated; and (iii) that BMO demanded payment of the amounts due under the Agreements. *Id.* ¶ 24 & Ex. E. Thereafter, BMO obtained possession of some of the Vehicles, but DTL failed or refused to surrender possession of other Vehicles despite BMO's demand that DTL surrender those Vehicles. *Id.* ¶¶ 25-29.

**IV. ANALYSIS.**

*A. Liability.*

BMO specifically seeks a default judgment on its claims for breach of the Agreements. Because BMO did not address the legal elements of other causes of action alleged in the complaint, I recommend that the Court find that BMO has abandoned those claims.[2] Therefore, I will only discuss liability under Count Four and Count Five.

Under Texas law, the elements of breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendants; and (4) damages sustained as result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001)(citing *Hussong v. Schwan's Sales Enter., Inc.*, 896 S.W.2d 320, 326 (Tex. App. 1995)). "A breach of contract occurs when a party fails or refuses

---

[2] In the conclusion of the second renewed motion, BMO seeks damages, an injunction and replevin. Doc. No. 26, at 21-22. However, in the body of the motion, BMO does not address the legal elements of injunctive relief or replevin or show, with specificity, how the well-pleaded facts in the complaint establish each element. Because I have repeatedly instructed counsel for BMO that a motion for a default judgment must discuss the legal elements of each claim and show that the complaint alleges facts sufficient to establish each element, Doc. Nos. 23, 25, I recommend that the Court not give BMO another opportunity to seek a default judgment on the unaddressed claims.

to do something he has promised to do." *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. 2009).

          1.      <u>Breach of the Lease</u>.

By virtue of its default, DTL admits that it entered into the Lease with GE Trust (a predecessor-in-interest of BMO) as lessor. Under the Lease, DTL agreed to pay monthly rental for the Leased Equipment in the amounts stated in the applicable schedule. BMO does not specifically allege that any of the Leased Equipment was delivered to DTL, but it does allege, and DTL admits, that after the event of default, BMO recovered some of the Leased Equipment from DTL and that DTL retained other Leased Equipment. This is sufficient to establish that the Leased Equipment was delivered to DTL. DTL further admits that it failed to pay all of the monthly rent due for the Leased Equipment. DTL additionally admits that BMO, as successor-in-interest to GE Trust, was damaged as a result of DTL's failure to pay rent as it agreed to do. Accordingly, I recommend that the Court find that the well-pleaded facts of the complaint establish that DTL is liable for breach of the Lease.

          2.      <u>Breach of the LSA</u>.

By virtue of its default, DTL admits that it entered into the LSA with GECC (a predecessor-in-interest to BMO), as lender. BMO does not specifically allege that GECC provided the loaned funds to DTL, but it does allege, and DTL admits, that GECC financed the purchase of the Vehicles and that DTL owes the principal balance on the loan. This is sufficient to establish that the loaned funds were provided to DTL. DTL further admits that it did not pay the amount due under the Agreements, which includes the LSA. Finally, DTL admits that BMO was damaged as a result of DTL's failure to pay as required. Accordingly, I recommend that the Court find that the well-pleaded facts of the complaint establish that DTL is liable for breach of the LSA.

*B.  Damages.*

1.  <u>Monetary Damages</u>.

In support of its request for monetary damages, BMO relies on the Affidavit of Micki Koepke in Support of Plaintiff's Motion for Default Judgment.  Doc. No. 22-1.

With respect to damages for breach of the Lease, Koepke avers that DTL failed to make all payments due under the Lease on August 17, 2016, August 18, 2016, September 1, 2016 and September 10, 2016 and all subsequent payments due thereafter.  *Id.* ¶ 9.  Failure to make a payment when due is an event of default under the Lease.  Doc. No. 1-1 ¶ 17.  Upon an event of default, BMO may recover from DTL the following:  (1) all past due and current lease payments; 2) the present value of the remaining payments calculated at a discount of the Prime Rate in effect on the date the Lease was cancelled; (3) all Lease charges; (4) the fair value of the Leased Equipment; (5) interest; and, (6) liquidated damages.  *Id.* ¶ 18(a). In exhibit G to her affidavit, Koepke provides the calculations of the damages due under the Lease.  Doc. No. 22-1, at 69-75. After deducting money BMO received from sale of some of the Repossessed Units[3], Koepke calculates that, as of May 24, 2017, DTL owed BMO $1,917,762.97, exclusive of fees and costs. *Id.* at 8 ¶ 27.

With respect to breach of the LSA, Koepke avers that DTL failed to make the September 1, 2016 payment due under the LSA and all subsequent payments due thereafter.  *Id.* ¶ 9.  On December 13, 2016, BMO notified DTL of the default and its acceleration of the balance due.  Doc. No. 1-5.  Under the LSA, BMO is entitled to (1) the principal amount due and owing; 2) interest on unpaid amounts at the default interest rate of 18% per annum or the maximum rate not prohibited

---

[3] As of the time the motion was filed, BMO had not yet disposed of all of the Repossessed Units. Doc. No. 26, at 17.  Counsel for BMO states that any net proceeds BMO receives from disposition of these Repossessed Units will be credited to the judgment amount.  *Id.*

by law; (3) late charges and other fees, including the expenses of retaking, holding, preparing for sale and selling the Collateral. Doc. No. 1-3 ¶ 5.2, 5.3. In exhibit F to the affidavit, Koepke calculates damages for breach of the LSA as of May 24, 2017 to be $111,391.33, exclusive of fees and costs. Doc. No. 22-1, at 68.

In sum, Koepke avers that, as of May 24, 2017, the total damages owed to BMO for breach of the Lease and the LSA were $2,029,154.30, exclusive of attorney's fees and costs. *Id.* at 8 ¶ 29. Interest continues to accrue at the rate set forth in the Agreements. *Id.*

### 2. Return of the Retained Units.

Pursuant to the terms of the Lease, BMO is entitled to immediate possession of the Retained Units. Doc. No. 1-1 ¶ 18(a). As of the filing of the motion, DTL had not surrendered the Retained Units. Doc. No. 22-1, at 9 ¶ 33. Accordingly, BMO seeks an order from the Court requiring DTL to surrender the Retained Units. *Id.* at 10 ¶ 40.

### 3. Attorney's Fees and Costs.

Under the Agreements, DTL is obligated to pay the attorneys' fees and costs BMO incurred in enforcing its rights under the Agreements. Doc. No. 1-1 § 18(b); Doc. No. 1-3 § 5.2. BMO asks that the Court stay the time for filing a motion for an award of attorney's fees and costs until such time as it obtains possession of the Retained Units.

## V. RECOMMENDATIONS.

For the reasons set forth above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

A. **GRANT in part** Plaintiff's Second Renewed Motion For Default Judgment (Doc. No. 26);

B.  **ORDER** DTL to produce the Retained Units to BMO at a specified date, time and place, failing which BMO may file a motion for replevin of the Retained Units;

C.  **ORDER** BMO to provide a proposed form of final order with interest computed as of a date established by the Court;

D.  **PERMIT** BMO to file a Bill of Costs and a motion for assessment of attorneys' fees on or before a date established by the Court; and,

E.  **DIRECT** the Clerk of Court to enter a judgment consistent with this Court's ruling on the motion and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 23, 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy